IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT INGRAM,                )<br>                                              )<br>            Plaintiff,        )<br>                                              )<br>vs.                                       )<br>                                              )<br>OLIVIA CRAVEN, RUSSELL NEWCOMB, )<br>DEL RAY HOLM, JOE MARTINEZ, STATE )<br>OF IDAHO, BUD BRINEGAR,   )<br>                                              )<br>            Defendants.      )<br>_____ ) | Case No. CV-06-22-S-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Docket No. 36) and Plaintiff's Motion for Summary Judgment (Docket No. 40).  Having reviewed the motions, responses, and replies, if any, the Court concludes that oral argument is unnecessary.  Accordingly, the Court enters the following Order.

## BACKGROUND

At the time of the filing of his lawsuit, Plaintiff was an inmate in the custody of the Idaho Department of Correction (IDOC).  He brings a First Amendment claim against Olivia Craven, Executive Director of the Idaho Commission of Pardons and Parole (Executive Director); Russell Newcomb, Del Ray Holm, and Bud Brinegar, members of the Parole Board (Parole Commissioners); and Joe Martinez, hearing officer for the Parole Board.

MEMORANDUM DECISION AND ORDER  1

The basis for Plaintiff's First Amendment claim is as follows. In February 2004, Defendant Martinez submitted a report and recommendation that Plaintiff be denied parole due to his lack of adequate programing, including the RSAT/Therapeutic Community Program, a component of which was an Alcoholics Anonymous or Narcotics Anonymous (AA/NA) program. The AA/NA program is a religious-based program. On February 11, 2004, the Parole Commission denied Plaintiff parole based upon Defendant Martinez's report. Plaintiff alleges that he told Defendant Martinez that he objected to the RSAT-Therapeutic Community program on First Amendment grounds prior to the Martinez preparing and submitting his report to the Parole Commissioners. *Complaint*, p. 3 (Docket No. 3).

On August 28, 2004, Plaintiff submitted a document to the Parole Commissioners entitled "Federal and State Court Rulings on Forced Participation in Alcoholics Anonymous." *Request for Admission No. 14* (Docket No. 40-3). On October 21, 2004, Plaintiff's Self-Initiated Progress Report (SIPR), which is like a motion for reconsideration of parole, was denied. In the SIPR, Plaintiff stated that AA/NA was a cult and he could not participate in it. *Request for Admission No. 20.*

It was not until late 2005 that the secular "Beat Your Own Addiction" program was added as a non-religious alternative component of the Therapeutic Community Program after a number of inmates challenged the AA/NA program requirement on First Amendment grounds. *Request for Admission No. 22.*

In May 2007, the ICPP Board gave Plaintiff a telephonic parole hearing at which

MEMORANDUM DECISION AND ORDER  2

Plaintiff's refusal to participate in the AA Program was not considered. Parole was denied because Plaintiff had only ten weeks on his sentence to serve, making parole infeasible. Plaintiff has served his full sentence and has been released from custody.

## CONSIDERATION OF MOTIONS FOR SUMMARY JUDGMENT

### A.     Standard of Law Governing Summary Judgment Motions

All parties assert entitlement to summary judgment. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party. To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv*., 809 F.2d at 630

MEMORANDUM DECISION AND ORDER  3

(internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party.  All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  The existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby*, 477 U.S. at 252.

The law has been clear for many years that an inmate may not be forced to participate in a religiously-oriented prison program.  *See Warner v. Orange County Dep't of Prob.*, 115 F.3d 1068, 1074 (2d Cir. 1996); *Kerr v. Farrey*, 95 F.3d 472, 474 (7th Cir. 1996); *cf. Lee v. Weisman*, 505 U.S. 577, 587 (1992).  While there are several different First Amendment tests developed by the United States Supreme Court to address various factual circumstances where religion is at issue, the Ninth Circuit has agreed with those courts that have applied the "coercion test" as stated in *Kerr v. Farrey*: "first, has the state acted; second, does the action amount to coercion; and third, is the object of the coercion religious rather than secular?"  *See Inouye v. Kemna*, 504 F.3d 705, 713 (9th Cir. 2007) (relying on *Kerr*, 95 F.3d at 479).

MEMORANDUM DECISION AND ORDER  4

In *Catala v. Commissioner, New Hamshire Department of Correction*, the court explained the "coercion test" as follows:

> Forced attendance or coercion is shown if a prison official, a parole board, or another state actor requires an inmate to attend a program that emphasizes religion or faith as a condition of his probation or sentencing. In contrast, merely suggesting or recommending a religious program, without force or coercion or when secular options are equally available, is not a First Amendment violation.

2005 WL 3133036, at *1 (D.N.H. 2005) (citations omitted). The Ninth Circuit recently determined that, as early as 2001, the law was clearly established that coerced participation in AA/NA was unconstitutional based on the Establishment Clause. *See Inouye v. Kemna*, 504 F.3d at 713-14.

**B.    Plaintiff's Injunctive Relief Claims against the Executive Director and Parole Commissioner Defendants**

Defendant Olivia Craven is the executive director of the Idaho Commission of Pardons and Parole. The Idaho Court of Appeals has characterized her statutory powers as follows:

> The executive director is described as the spokesperson for the Commission; however, the director is not a member of the Commission. Rather, the director serves as a full-time employee for the Commission. The director's duties include handling the daily administration of the Commission, acting as an advisor to the Commission, and acting as a liaison between the public and the Commission. A review of the pertinent statutes reveals that there is no prohibition against delegation of such authority to the director. As explained, the approval of recommended parole conditions is, pragmatically, part of the daily administration of the Commission. We agree that the Commission may lawfully delegate specific authority to the director to act in its behalf in approving the Board's recommended parole conditions.

MEMORANDUM DECISION AND ORDER  5

*Mellinger v. Idaho Dept. of Corr.*, 757 P.2d 1213, 1219 (Idaho Ct. App. 1988).

Based on the foregoing – and assuming that a First Amendment violation occurred – the Court finds that Craven would be responsible for enforcing injunctive relief, such as a new parole hearing.  It is clear from the Parole Commission minutes of Plaintiff's hearing that Defendant Craven attended and was involved in the hearing denying parole. Nothing in the minutes reflects that Plaintiff objected to the prison programming on the basis of religious grounds, or that the Executive Director or the Commissioners knew of such an objection, if one existed.  Plaintiff's parole was denied for lack of completed programming, poor community supervision and criminal history, a poor parole plan, and a minimization or denial of the offenses.  *See Exhibits to Complaint*, pp. 14-16 (Docket No. 3).  Thus, the element of causation is missing from the Executive Director's actions during this time period.  This same reasoning applies to the Parole Commissioner defendants.

However, *after* the religious issues were raised in August 2004 and prior to 2007, Defendants did not afford Plaintiff a new hearing at which failure to complete the religious programing was *not* a consideration.  Plaintiff was given such a hearing in 2007. That and the fact that he has been released from prison after having served his entire term have mooted his injunctive relief claim against the Executive Director and the Parole Commissioners.  Plaintiff's claims for damages will be discussed below when the Court addresses immunity.

**C.     Claim Against Joe Martinez**

MEMORANDUM DECISION AND ORDER  6

Joe Martinez's job as a parole hearing officer is to conduct pre-hearing interviews with inmates becoming eligible for parole and to create reports for the Parole Commission based upon pre-sentence investigation reports, court orders, program completion reports, psychological and substance abuse assessments, and the inmate interview. *Martinez Affidavit*, at ¶¶ 4-7  (Docket No. 41-2).  In his report, he makes a recommendation to the Commission regarding whether the inmate should be paroled.  *Id*. at ¶ 7.  Parole hearing officers report to the executive director of the Parole Commission.  *See Commission Organizational Chart*,  *available at* http://www2.state.id.us/parole.  The Parole Commission has the sole authority and responsibility in determining whether an inmate will be paroled.  *Martinez Affidavit*, at ¶ 8.

Martinez recognized that Plaintiff had substance abuse issues that should be addressed prior to parole.  He declares that he did not care which substance abuse program Plaintiff attended, but recognized that Plaintiff needed to attend one before being paroled.  Martinez did not require Plaintiff to participate in any particular program.  *Id*. at ¶¶ 13-17.  However, it appeared that the *only* rehabilitative program available at the prisons, the RSAT/Therapeutic Community program, required AA/NA during the time period at issue.  Plaintiff stated to Martinez during the interview that he felt "none of the Thinking Errors or Cognitive Self-Change programs would work for him, due to him being a loner and that he would not make it through the entire program and would not want to set himself up for failure."  *Exhibits to Complaint*, p. 15 (Docket No. 3).

Plaintiff alleges that he informed Parole Hearing Officer Joe Martinez that he had

MEMORANDUM DECISION AND ORDER  7

a First Amendment issue with the programming offered at the prison, but that Martinez ignored his complaint and chose to include the recommendation that Plaintiff "needs to complete a long term Therapeutic Community program"in his report.  *See Catala*, 2005 WL 3133036, at *2 (inmate complained to Warden and Commissioner that forcing him to attend the 12-step program violated his First Amendment rights, and Warden and Commissioner ignored the complaint).

It is unclear from the record whether Martinez knew if AA/NA was a required part of all therapeutic community programs at the prison.  Plaintiff did not raise a First Amendment issue at the parole hearing when the Therapeutic Community requirement was discussed, which undercuts his assertion that he raised the issue with Martinez.  The record reflects that Plaintiff first informed the Parole Commissioners of his First Amendment issue with AA/NA *after* he was denied parole.  The Court concludes that there is a genuine issue of material fact as to whether Martinez knew that all Therapeutic Community programs in 2004 required AA/NA and whether Plaintiff told Martinez he had a First Amendment issue with AA/NA.  As a result, neither party is entitled to summary judgment.

**D.     Whether Absolute or Qualified Immunity Applies to Foreclose Plaintiff's Monetary Relief Claims**

The United States Supreme Court has determined "that some officials perform 'special functions' which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve absolute protection from damages

MEMORANDUM DECISION AND ORDER  8

liability." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268-69 (1993).  For example, the Supreme Court has determined that common law immunity considerations "support[] a rule of absolute immunity for conduct of prosecutors that was 'intimately associated with the judicial phase of the criminal process.'"  *Id*. at 270 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  Defendants who "seek absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope." *Butz v. Economou*, 438 U.S. 478, 506 (1978).

Qualified immunity, while not as comprehensive as absolute liability, is generally deemed sufficient to protect the interests of government officials.  *Buckley*, 509 U.S. at 268.  Case law provides no bright-line rule as to whether qualified or absolute immunity applies.  Rather, a court analyzing immunity issues must always look to the function being performed – whether it has a "functional tie to the judicial process," or whether it is merely investigatory.  *Genzler v. Longanbach*, 410 F.3d 630, 637 (9th Cir. 2005) (citing *Buckley*).

The Supreme Court has not addressed immunity for parole commissioners, but it has been clear that it is not the title, but the function, of a government actor that is determinative of whether absolute or qualified immunity applies.  Accordingly, in *Swift v. State of California*, 384 F.3d 1184 (9th Cir. 2004), the Ninth Circuit Court of Appeals outlined the reach of absolute immunity regarding parole decisions:

> The Supreme Court has reserved deciding whether members of state parole boards have absolute quasi-judicial immunity for their official actions. *Martinez v. California*, 444 U.S. 277, 285 n. 11, 100 S.Ct. 553, 62

MEMORANDUM DECISION AND ORDER  9

>L.Ed.2d 481 (1980). We have held, however, that parole board members are entitled to absolute immunity when they perform "quasi-judicial" functions. *Anderson*, 714 F.2d at 909-10. Thus, parole board officials of the BPT are entitled to absolute quasi-judicial immunity for decisions "to grant, deny, or revoke parole" because these tasks are "functionally comparable" to tasks performed by judges. *Sellars*, 641 F.2d at 1303; *Bermudez v. Duenas*, 936 F.2d 1064, 1066 (9th Cir.1991) (holding *Sellars* immunity encompasses actions "taken when processing parole applications"). Absolute immunity has also been extended to parole officials for the "imposition of parole conditions" and the "execution of parole revocation procedures," tasks integrally related to an official's decision to grant or revoke parole. *Anderson*, 714 F.2d at 909.
>
>We have also explained, however, that parole officials are not "entitled to absolute immunity for conduct not requiring the exercise of quasi-judicial discretion." *Id*. "There is no reason to clothe actions taken outside an official's adjudicatory role with the absolute immunity tailored to the demands of that role." *Id*.

*Id*. at 1188-89.

### 1.      Executive Director and Parole Commission - Absolute Immunity

Based on the function test, it is clear that the Executive Director is entitled to absolute immunity for her exercise of discretion in enforcing the policy requiring inmates to complete the AA/NA program in order to be eligible for parole, and, in particular, her failure to remedy the circumstance in the face of Plaintiff's First Amendment objections that were brought to her attention between the parole denial and the SIPR or motion for reconsideration.  The Parole Commissioners are likewise entitled to absolute immunity for their decision to require Plaintiff to attend a religious-oriented rehabilitation program in order to qualify for parole in the face of Plaintiff's First Amendment objections after

MEMORANDUM DECISION AND ORDER  10

the parole denial and prior to the SIPR denial.

Absolute immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (internal citations omitted). When absolute immunity applies, it means that a state actor is not liable for monetary damages. *Stump v. Sparkman*, 435 U.S. 349 (1978). As a result, the Executive Director and Parole Commissioners are entitled to summary judgment on Plaintiff's claims for monetary damages.

    2.    <u>Parole Officer Martinez - Absolute Immunity</u>

While most of the cases dealing with parole officers relate to parole revocation recommendations and hearings, they are nevertheless helpful in analyzing Defendant Martinez's immunity defense because they follow the Supreme Court's general rule that absolute immunity is a function-based determination. In *Scotto v. Almenas*, 143 F.3d 105 (2d Cir. 1998), the Second Circuit Court of Appeals determined that parole officers "are entitled to absolute immunity when they perform discretionary judicial functions, but not police-like, investigatory, or administrative functions. *Accord, Hinton v. Moritz*, 11 F.Supp. 2d 272 (D. N.Y. 1998).

Here, Martinez's duties were to conduct pre-hearing interviews with inmates becoming eligible for parole, to recommend to the Commission conditions of parole, and to recommend that parole be granted or denied. The issue is whether Martinez's actions were prosecutorial or adjudicatory in nature, to which absolutely immunity applies, or

MEMORANDUM DECISION AND ORDER  11

investigatory or administrative in nature, to which only qualified immunity applies (discussed directly below).  *See Scotto v. Alemanas*, 143 F.3d at 110-11.

Martinez does not have the discretionary authority to set parole conditions or deny inmates parole.  That duty belongs to the Parole Commissioners and to the Executive Director, to the extent that she aids the Commissioners.  Martinez merely interviews the inmate, recommends certain parole conditions, and recommends that parole be granted or denied.  Even though Martinez's job is titled "Parole Hearing Officer," his interactions with Plaintiff are referred to as a "prehearing interview," not a "hearing."

Accordingly, as in *Swift v. California*, this Court agrees that Plaintiff's facts are much like *Scotto*'s facts, where qualified, rather than absolute, immunity applied:

> In *Miller*, we explained that a social worker's "decision to institute proceedings to make a child a ward of the state is functionally similar to the prosecutorial institution of a criminal proceeding" and "is likely entitled to absolute immunity." *Miller*, 335 F.3d at 898. By contrast, in *Scotto*, the Second Circuit reasoned that when a parole officer recommends that a senior official initiate parole revocation proceedings, the recommendation is not comparable to initiating a prosecution and is more analogous to "a police officer applying for an arrest warrant." *Scotto*, 143 F.3d at 112-13. The recommending officer is thus only entitled to qualified immunity, while the senior official who makes the discretionary decision to issue the warrant is the one who initiates the revocation "prosecution" and is absolutely immune. *Id*. at 113.

*Swift*, 384 F.3d at 1192 (citing *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003)).

Consequently, the Court concludes that Martinez is not entitled to absolute immunity.  The Court next considers whether Martinez is entitled to qualified immunity.

    3.    <u>Parole Officer Martinez - Qualified Immunity</u>

MEMORANDUM DECISION AND ORDER  12

In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). In practical terms, the qualified immunity doctrine means that a state official may be held personally liable in a § 1983 action if he or she knew or should have known they were violating a plaintiff's clearly-established federal rights. *Id*. True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The threshold question in considering application of the qualified immunity defense is whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). If, viewing the alleged injuries in a light most favorable to the plaintiff, the Court finds that a constitutional right appears to have been violated, it proceeds to the next step, which is to inquire whether the right was clearly established. *Id*.

Here, there is no question that Plaintiff has stated a valid claim, and that, *if* the facts alleged are true, Defendant Martinez's conduct violated Plaintiff's rights. The Court therefore proceeds to the next step of the *Saucier v. Katz* test, which is to determine whether the right was clearly established in August 2004. The Ninth Circuit recently

MEMORANDUM DECISION AND ORDER  13

determined that, as early as 2001, the law was clearly established that coerced participation in AA/NA was unconstitutional based on the Establishment Clause. *See Inouye v. Kemna*, 504 F.3d at 713-14. Therefore, qualified immunity would not apply.

### E.   Conclusion

The Court concludes that there is no genuine issue of fact that the Executive Director and the Parole Commission Defendants violated Plaintiff's Establishment Clause rights by requiring him to attend AA/NA meetings as a prerequisite to parole eligibility after he voiced a First Amendment objection in August 2004. That he was actually denied parole is not and cannot be at issue in a § 1983 action under *Wilkinson v. Dotson*. Plaintiff is not entitled to injunctive relief on his First Amendment claim because he has completed his sentence, and parole eligibility is no longer at issue. As for monetary damages, the Court concludes that the Executive Director and the Parole Commissioners are entitled to absolute immunity. All claims against these Defendants for monetary relief shall be dismissed with prejudice. The Court notes that it has previously determined that the State of Idaho cannot be sued in federal court under § 1983 because the Eleventh Amendment provides for immunity for states.

Defendant Martinez is not entitled to absolute or qualified immunity. However, because genuine issues of facts remain as to his liability, neither party is entitled to summary judgment. Because the issue remaining is extremely narrow and does not

involve damages for the denial of parole,[1] but only for the allegedly wrongful recommendation of the requirement of AA/NA attendance to potentially become eligible for parole, the Court will require the parties to attend mediation with a mediator of their choice or a judicial settlement conference with a magistrate judge.  The parties shall contact the Court's Alternative Dispute Resolution (ADR) Director at 334-9067 to determine the details.  The mediation or settlement conference shall be held within 90 days.  Nothing prevents the parties from engaging in settlement negotiations between themselves prior to the mediation or settlement conference.

---

[1] *Wilkinson v. Dotson* prevents a party from challenging parole denial in a civil rights matter.  Therefore, Plaintiff's calculation of a "daily amount" for damages is not applicable, because Plaintiff's only claim is for a new parole hearing, at which he may or may not have been granted parole.  It is clear from the February 2004 parole denial that many factors prevented Plaintiff from obtaining parole, not only the lack of programming.

MEMORANDUM DECISION AND ORDER  15

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 40) is DENIED.

IT IS FURTHER HEREBY ORDERED that Defendants Motion to Dismiss, treated as a Motion for Summary Judgment (Docket No. 36) is GRANTED as to all claims against the State of Idaho, Olivia Craven, Russell Newcomb, Bud Brinegar, and Del Ray Holm, and it is DENIED as to claims against Joe Martinez.

IT IS FURTHER HEREBY ORDERED that the parties shall attend mediation before the Honorable David O. Carter at the James A. McClure Federal Building and U.S. Courthouse in Boise, Idaho.  The mediation shall be conducted on **Wednesday, January 16, 2008 at 9:00 a.m. (Boise time)**.  No mediation statement will be required, however, the Plaintiff's remaining claim will be discussed at the mediation.  In the event Plaintiff is unable to travel to Boise, Mr. Ingram shall contact Denise Asper at (208) 334-9067, to make other arrangements.  Counsel for the IDOC shall bring a representative from the IDOC with full settlement authority to the mediation.

DATED:  **January 8, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge